**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION**

| | |
|---|---|
| MISTY D. MORSE, individually and on behalf of others similarly situated, | ) ) ) |
| Plaintiff | ) ) ) ) ) ) |
| vs. | ) ) CASE NO. 2:13-cv-408 |
| EQUITY LIFESTYLE PROPERTIES, INC., | ) ) ) ) |
| Defendant | ) |

### *PLAINTIFF'S COLLECTIVE ACTION AND INDIVIDUAL COMPLAINT FOR DAMAGES*

Comes now the Plaintiff, Misty D. Morse ("Morse"), individually and on behalf of others similarly situated, by her counsel, and for her claims against the Defendant, Equity Lifestyle Properties, Inc. ("Equity"), alleges and says:

### *I. STATEMENT OF THE CASE*

Morse brings this collective action against Equity pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 USC § 216(b), for overtime violations related to Equity's failure to include commission payments in its calculation of its employee's regular rate of pay when paying overtime compensation for hours worked in excess of forty (40) in a work week. Morse brings this collective action portion of her claim for herself and all current and/or former employees of Equity who were subjected to the same illegal wage practices, including the failure to pay overtime wages at the proper rate. Specifically, Morse and her fellow Equity coworkers were non-exempt, hourly-paid

employees, however, said employees were also paid, in smaller part, on a commission basis. Equity failed to include commission payments in its calculation of its employees' regular rates of pay when paying overtime compensation for hours worked in excess of forty (40) in a calendar week. By failing to include commission earnings in the overtime calculation, Equity violated the FLSA and underpaid overtime compensation to Morse and her fellow coworkers.

Additionally, Morse is pursuing her own individual claims against Equity under the FLSA and the Indiana Wage Claims Act. Morse is seeking recovery of all unpaid wages, including all unpaid minimum wages, unpaid overtime compensation, liquidated damages, plus payment of her reasonable attorney's fees, costs and expenses.

## *II. FACTUAL ALLEGATIONS*

1. Morse is a resident of the State of Indiana, and is domiciled in Clinton, Vermillion County, Indiana.

2. Equity is a national company which owns at least 370 properties it describes on its website as "communities" in at least 32 states and British Columbia. Equity is headquartered at Two North Riverside Plaza, Suite 800, Chicago, Illinois 60606.

3. Morse worked for Equity at its Horseshoe Lakes RV community in St. Bernice, Vermillion County, Indiana. Morse worked for Equity (and the prior owner of the Horseshoe Lakes property) from 2005 until she was terminated by Equity on or about August 27, 2013.

4. In her last job with Equity, Morse held the job titled "administrative assistant." Prior to that job, Equity gave Morse the job title "ranger."

5. Throughout her employment with Equity, Morse was a non-exempt employee who was compensated by Equity on an hourly-paid basis.

6. Throughout Morse's period of employment with Equity, Equity failed and refused to pay Morse for all of her hours worked and, in so doing, also failed to fully compensate Morse for all overtime work performed. Equity's wage violations committed against Morse include, but are not limited to, the following:

   a. Equity did not accurately record all of Morse's hours worked and Equity did not fully compensate Morse for all of her hours worked;

   b. As an example, in Morse's last year of work for Equity, Equity would only allow Morse to clock in for work on a computer at her scheduled start time and further required Morse to clock out from work at her scheduled end time. Equity required Morse to report up to an hour early for work and required Morse to prepare for her day by opening and preparing two cash registers, counting petty cash, making coffee to sell to guests, vacuuming the office and taking out trash. All of these tasks had to be performed before Morse was permitted to clock in for the day. After Morse would clock out for the day, Equity required Morse to complete any customer contracts, answer work emails, complete customer reservations, and drive to the bank to make a deposit. All of this work was performed after Morse was off the clock for the day.

   c. Morse was required to work without compensation at special events hosted by the campground, such as holiday and weekend

        celebrations.

    d.    Equity's computerized time-keeping system automatically deducted a thirty (30) minute meal break from Morse's time on each day she worked, but Morse never was permitted to take a bona fide meal period. In fact, Morse had to work through every scheduled lunch break. She had to stay in her office and sell items to campground guests, answer the telephone, collect payments from customers and otherwise assist any customers at the office.

    e.    Equity did not pay Morse for all of her hours worked based upon a continuous work day method, meaning, Equity did not measure Morse's hours of work from a first principal activity each day and pay to a last principal activity, nor did Equity pay Morse for all of her hours of work from a first principal activity each day and pay to a last principal activity.

7.    Equity compensated Morse and other non-exempt employees of its communities on an hourly-paid basis. At the time of her termination, Neal was paid at a base rate of pay of $9.00 per hour. She was paid overtime compensation at a rate equal to 1.5 times her $9.00 per hour rate ($13.50) when she worked in excess of forty (40) hours in a calendar week. This was true for all non-exempt employees of Equity's communities. Finally, Morse and her similarly situated coworkers were paid commissions as a portion of their compensation. For Morse and her similarly situated coworkers, hourly pay was the primary source of compensation. Commissions were a lesser component of compensation.

8. Equity did not include Morse's commissions in its computation of her overtime wages. Specifically, Equity did not include Morse's commission wages in its calculation of her regular rate of pay before calculating her overtime rate of compensation in weeks in which Morse was owed overtime compensation. Equity committed this same overtime violation with each of its hourly paid employees of communities who were paid commissions. This failure to include commissions in overtime compensation is readily seen in the pay stubs Equity issued to Morse and all similarly situated employees. The pay stubs show that overtime rates were calculated simply as 1.5 times the employee's hourly rate and did not include commissions paid in the overtime computation.

9. Morse and her similarly situated coworkers were non-exempt employees and were owed overtime compensation whenever one worked in excess of forty (40) hours in a calendar week. Equity treated Morse and her similarly situated coworkers as non-exempt (overtime eligible) employees.

10. Specifically, as a matter of policy and practice, Equity failed and refused to include commission income in its calculation of overtime compensation for all of its employees of its communities who were paid commissions. This fact will be easy to prove on a class-wide basis, as pay stubs issued by Equity to such employees show that overtime was calculated simply as 1.5 times the employee's base hourly rate of pay and that commissions were paid, but were not included in the overtime computation.

11. Because Equity failed to include commission wages in its overtime computation for Morse and her similarly situated coworkers, Equity underpaid overtime compensation to Morse and all of her similarly situated coworkers for a period of time of

many years.

12.     As described above, Equity has failed and refused to pay Morse and other similarly situated coworkers at an overtime rate of compensation which includes commissions, as is required under the FLSA.

13.     Morse routinely performed work for Equity that far exceeded forty (40) hours during a single calendar week, however, for the reasons described above, Equity failed to fully compensate Morse for all hours worked and, in so doing, failed also to compensate Morse at an overtime rate of pay for her hours worked in excess of forty (40) in each calendar week.

14.     After her August 27, 2013 termination, Equity wrongfully and unlawfully withheld Morse's final pay check.  Instead, Equity wrote to Morse and told her it would pay her final pay check in the sum of $504.00, but only if Morse signed a "Separation and Release Agreement" releasing Equity from any and all legal claims Morse may bring against the company, including any wage and hour and employment related claims.  Morse did not sign Equity's agreement.  Equity has continued to withhold Morse's last pay check.

15.     More than twenty (20) days have passed since the last date Equity could have paid Morse her wages in full and on time.

16.     By way of this Complaint, Morse seeks for herself and all similarly situated coworkers all unpaid overtime compensation under the FLSA related to Equity's underpayment of overtime and improper calculation of the regular rate.  For herself, Morse seeks all wages owed to her, including all earned wages, all illegally deducted wages, all unpaid wages, all overtime compensation, all liquidated damages, plus all

statutory penalties for late payment of wages.  Additionally, Morse seeks payment of all of his reasonable attorney's fees, costs and expenses.  With respect to Morse's uncompensated wages and overtime, Equity's violations of Morse's rights under the FLSA were willful, warranting the application of the three year statute of limitations.

### *III.  COLLECTIVE ACTION ALLEGATIONS*

17. Morse incorporates herein by reference paragraphs 1 - 16 above.

18. Morse brings this action individually and as a collective action on behalf of other current and former employees of Equity's communities whose compensation included payment of a commission and who were denied payment in full of overtime compensation, as required by the FLSA.

19. This action is filed as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 USC § 216(b) on behalf of Morse and on behalf of all current and former employees of Equity's communities who were underpaid overtime compensation based upon a failure to include commission pay in the calculation of each employee's regular rate.  By virtue of the "collective action," Morse represents the identical and/or similar interests of former and current Equity community employees denied full overtime compensation under the same circumstance.  Morse anticipates that other Equity employees and former employees will opt in to the action upon notice.

20. Pursuant to the FLSA, Morse will pursue discovery to obtain the names of the other current and former Equity community employees who were paid commissions in order to provide notice of the collective action, and to offer the opt in opportunity.

21. Particularly with the types of wage claims and practices at issue in this case, there are questions of law and fact that are common to the entire collective group.

22.     The claims of Morse, the representative party, are typical of the claims of the whole collective group of current and former Equity community employees harmed by Equity's unlawful wage practices.

23.     Morse will act to fairly and adequately protect the interests of the entire collective group of employees.

24.     A collective action is superior to other available means for the fair and efficient prosecution of these wage claims against Equity.  For example, to prove Equity's unlawful wage practices, Morse and other members of this collective group would seek in discovery records about all similarly situated current and former employees who were similarly denied commissions and full overtime compensation. Many, if not all, of the potential opt-in plaintiffs are likely to be called upon as witnesses in Morse's overtime case, and each will likely serve as a witness in the other's overtime wage lawsuit.  Individual lawsuits by the members of the collective group could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for limited funds.  Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

25.     A determination regarding the "similarness" of those able to participate in the collective action would also allow litigation of claims that may not otherwise be cost effective.  Some, if not most, of the individual group members may not be aware of their rights to their wages under Federal law, or may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

26.     A collective action will result in an orderly and expeditious administration

of the group members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

### IV. JURISDICTION AND VENUE

27. This Court has jurisdiction over the subject matter of this Complaint under 28 USC § 1331, 28 USC § 1343, and 29 USC § 201 et seq. This Court has supplemental jurisdiction over Morse's related claims under the Indiana Wage Claims Act.

28. Venue is proper in this Court pursuant to 28 USC § 1391 because the unlawful conduct alleged herein was committed in the Southern District of Indiana.

### V. PARTIES

29. Morse is currently domiciled in and a resident of Clinton, Vermillion County, Indiana.

30. Equity employed Morse at its property in Vermillion County, Indiana.

### VI. ADMINISTRATIVE PROCEDURES

31. Because she was terminated, Morse has reported Equity's failure to pay her all of her wages to the Indiana Department of Labor, Wage and Hour Division. Morse has obtained permission to pursue this matter privately, with her attorney serving as the Indiana Attorney General's "designee." That permission was issued by the Office of the Indiana Attorney General by letter dated October 16, 2013. This permission allows Morse to pursue her wage claim under I.C. 22-2-9-2 and I.C. 22-2-9-4, utilizing the remedial provisions of I.C. 22-2-5-2.

### VII. STATEMENT OF CLAIMS

#### A. Fair Labor Standards Act Collective Action Claims

32. Morse incorporates herein by reference paragraphs 1 through 31 above.

33. Equity is an "enterprise," as that term is defined by the FLSA, covered by the overtime and minimum wage provisions of the FLSA.  Equity is an "employer," as that term is defined by the FLSA.  Equity is a "person," as that term is defined by the FLSA.

34. Equity committed overtime violations under the FLSA, as earned commission amounts should have been included in any calculation of overtime compensation due to Morse and her similarly situated coworkers.

35. Because it failed to include commission wages in its calculation of overtime compensation, Equity failed to pay Morse and similarly situated coworkers at the full and correct overtime rate of pay, as required by the FLSA, in any and all calendar weeks in which Morse or one of her fellow coworkers worked in excess of forty (40) hours.

36. Equity's failure to comply with the FLSA's provisions regarding minimum wages and overtime compensation has been willful and without justification, and subjects Equity to a three year statute of limitations.

37. Morse seeks, for herself and all members of the collective group, all available damages, including unpaid wages, unpaid minimum wages, unpaid or underpaid overtime compensation, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which they may be entitled for Equity's violations of the Fair Labor Standards Act.

### A.  MORSE'S INDIVIDUAL CLAIMS UNDER THE FAIR LABOR STANDARDS ACT

38. Morse incorporates herein by reference paragraphs 1 - 37 above.

39. Equity is a covered employer subject to the provisions of the Fair Labor Standards Act, as it is an "enterprise."  Further, Equity is an "employer" as that term is defined under the FLSA at 29 USC § 203(d).

40. By not paying Morse at all for some of her periods of time worked, Equity has violated the Fair Labor Standards Act provisions regarding minimum wages.  More importantly, most, if not all, of the unpaid hours owed to Morse are hours that constitute overtime and hours that should have been compensated at an overtime rate of pay.

41. By not paying Morse for her overtime hours worked, Equity has violated Morse's rights to be paid overtime under the Fair Labor Standards Act.  Morse was a non-exempt employee.

42. Equity's failure to comply with the Fair Labor Standards Act's provisions regarding minimum wages and overtime compensation is willful and without justification.

43. Morse seeks all available damages, including her unpaid wages, minimum wages, unpaid overtime compensation itself, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which she may be entitled for Equity's violations of the Fair Labor Standards Act.

### C.  MORSE'S INDIVIDUAL CLAIMS UNDER THE INDIANA WAGE CLAIMS ACT

44. Morse incorporates herein by reference paragraphs 1 - 43 above.

45. By way of this Complaint, Morse is seeking all available damages, including unpaid wages, damages for late payment of wages, and all available liquidated and/or treble damages, plus any and all attorney's fees, costs, and expenses,

and any other damage to which she may be entitled pursuant to Indiana Law.  Pursuant to the Indiana Wage Claims Act, which incorporates I.C. 22-2-5-2, Morse is seeking payment of unpaid wages and all available damages, including, but not limited to, double the amount of wages due as an additional monetary damage, plus all of her attorney's fees, costs and expenses.

### *VIII.  PRAYER FOR RELIEF*

WHEREFORE, Plaintiff, Misty D. Morse, individually and on behalf of members of the collective group, respectfully requests that the Court enter judgment against the Defendant, Equity Lifestyle Properties, Inc., and issue all available relief to her and to the entire collective group, including, but not limited to, the following:

1. All damages available under the FLSA, including all unpaid minimum wages, all unpaid and/or underpaid overtime compensation, all liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;

2. All damages available under the FLSA related to her individual claims, including all unpaid minimum wages, all unpaid overtime compensation, all liquidated damages, plus payment of her reasonable attorney's fees, costs and expenses;

3. All damages available under the Indiana Wage Claims Act, including all unpaid wages, all liquidated damages, plus payment of her reasonable attorney's fees, costs and expenses;

4. All unpaid wages;

5. All reasonable attorney's fees and expenses;

6. Costs;

7. Pre-judgment interest, if available; and

8. Any and all other relief just and proper in the premises.

        HUNT, HASSLER, LORENZ & KONDRAS LLP
        100 Cherry St.
        Terre Haute, Indiana 47807
        (812) 232-9691


        By/s/Robert P. Kondras, Jr.
          Robert P. Kondras, Jr.
          Attorney No. 18038-84
          Attorney for Plaintiff
          kondras@huntlawfirm.net