# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### TERRE HAUTE DIVISION

| | | |
|---|---|---|
| MISTY D. MORSE, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff | ) ) ) | |
| | ) ) | **COLLECTIVE ACTION COMPLAINT PURSUANT TO 29 USC § 216(b)** |
| vs. | ) ) ) | CASE NO.  2:13-cv-408-JMS-MJD |
| EQUITY LIFESTYLE PROPERTIES, INC., | ) ) ) | |
| Defendant | ) | |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO CERTIFY COLLECTIVE ACTION STATUS AND ISSUE NOTICE

Plaintiff, by counsel, submits the following in support of her Motion to Certify Collective Action Status and Issue Notice:

## I.  INTRODUCTION

Plaintiff Misty D. Morse (hereinafter "Morse"), is filing her Collective Action Complaint for Damages against Defendant Equity Lifestyle Properties, Inc. (hereinafter "Equity"), contemporaneously with the Motion to Certify Collective Action Status, raising claims under the Fair Labor Standards Act, 29 USC § 201 et seq ("FLSA").  Morse asks the Court to certify this matter as a collective action pursuant to the FLSA and to approve her proposed class of collective plaintiffs.  In addition, Morse requests that the Court treat this matter as a collective action through discovery and order immediate notice of the collective action for unpaid overtime

wages under the FLSA to all current and former non-exempt Equity employees ("employees") who received commission compensation in a work week they worked in excess of forty hours, so that these similarly situated employees have the opportunity to join the lawsuit and recover unpaid wages.

Morse's primary theory of collective action FLSA overtime violation focuses upon Equity's history and practice whereby Equity failed to pay overtime wages at the proper rate. Specifically, Morse and her fellow Equity employees were non-exempt, hourly-paid employees who were also paid, in smaller part, on a commission basis. Equity failed to include commission payments in its calculation of its non-exempt employees' regular rates of pay when paying overtime compensation for hours worked in excess of forty (40) in a calendar week. By failing to include commission earnings in the overtime calculation, Equity violated the FLSA and underpaid overtime compensation to Morse and her fellow Equity non-exempt employees. *See* 29 CFR §§ 778.117 - 778.120.

## II. FACTUAL SUMMARY RELEVANT TO THE FLSA CLAIMS

Equity is a national company which owns at least 370 properties it describes on its website as "communities" in at least 32 states and British Columbia. Equity is headquartered in Chicago, Illinois. During the period of time covered by this action, Equity either has or had properties in the State of Indiana in St. Bernice, Vermillion County. (Exhibit 1 - Morse Affidavit ¶¶ 2-3).

Morse was employed by Equity as an "administrative assistant" and "ranger" for a period of approximately eight (8) years at its Horseshoe Lakes RV community in St. Bernice,

Vermillion County, Indiana.  Morse's employment with Equity was terminated on or about August 27, 2013.  (Exhibit 1, Morse Affidavit ¶¶ 3-4).

Equity compensated Morse and other non-exempt employees on an hourly-paid basis. (Exhibit 1, Morse Affidavit ¶¶ 5, 7).  At the time of her termination, Morse was paid a base rate of pay of $9.00 per hour.  She was paid overtime compensation at a rate equal to 1.5 times her $9.00 per hour rate ($13.50) when she worked in excess of forty (40) hours in a calendar week. (*See* Exhibit 2 - Morse's Earnings Statement Dated June 19, 2013).  This was true for all non-exempt employees of Equity's communities.   Finally, Morse and the similarly situated employees were paid commissions as a portion of their compensation, but the hourly pay was the primary source of compensation.   Commissions were a lesser component of compensation. (Exhibit 1, Morse Affidavit ¶¶ 5, 7).

The commissions received by Morse were not included by Equity in the computation of Morse's overtime wages.  (*See* Exhibit 2).  Specifically, Equity did not factor in commissions into Morse's regular rate of pay before calculating her overtime rate of compensation for work weeks in which Morse was owed overtime compensation.  Equity committed this same overtime violation at all of its communities nationwide with each of its hourly paid non-exempt employees who received commissions.  This failure to include commissions in overtime compensation is readily seen in the Earnings Statement Equity issued to Morse and all similarly situated employees.  The Earnings Statement shows that overtime rates were calculated simply as 1.5 times the employees' hourly rate and did not include commissions in the overtime computation. (*See* Exhibit 2).

Specifically, Morse's Earnings Statement dated June 19, 2013 and covering the pay period from May 30, 2013 to June 12, 2013, clearly shows Equity's violation of the FLSA by its failure to factor Morse's commission in her regular rate of pay to calculate her overtime wages. The Earnings Statement shows that Equity paid Morse as follows:

| Taxable Earnings | Rate | Hrs/Qty | Current |
|---|---|---|---|
| Hourly | 9.00 | 78.75 | $708.75 |
| Overtime (x 1.5) | 13.50 | 7.25 | $ 97.88 |
| Commission | | | $125.00 |
| **Total** | | | **$931.63** |

(*See* Exhibit 2).  The overtime rate of pay Equity used for Morse, $13.50, was only 1.5 times Morse's base rate of pay, which was $9.00 per hour.  Equity did not include the $125.00 commission received during this pay period to calculate the overtime compensation.  To properly pay all overtime to Morse, Equity was required to divide the commission amount by the total hours worked in the pay period, divide that sum by two (2), and then multiply Morse's overtime hours worked, 7.25 hours, by that result.  Here, Equity owed Morse an additional $5.29 overtime compensation for the pay period, as shown by the calculation:

$125.00 ÷ 86 hours = $1.45

$1.45 ÷ 2 = $0.73

$0.73 x 7.25 overtime hours = $5.29[1]

[1]See 29 CFR § 778.120 for method of calculating additional overtime wages using commission pay.  The $5.29 unpaid overtime figure would also be doubled to $10.58 under the FLSA liquidated damage provision at 29 USC § 216(b).

The wage and hour practice and policy described above, and applied to Morse, of Equity's failure to include commission wages in its computation of overtime compensation is/was the same wage and hour practice and policy Equity applied nationwide to all of its other non-exempt employees who received commissions and worked overtime hours.  (Exhibit 1 - Morse Affidavit ¶¶ 7-10).

Morse, and the other similarly situated non-exempt employees of Equity's communities who were paid commission, are/were entitled to all overtime compensation for weeks in which they worked in excess of forty (40) hours.  Equity treated Morse and her similarly situated coworkers as non-exempt (overtime eligible) employees.  Morse and her similarly situated coworkers routinely worked in excess of forty (40) hours in a calendar week while employed. (Exhibit 1 -Morse Affidavit ¶¶ 7-10; Exhibit 2).

Specifically, as a matter of policy and practice, Equity failed and refused to include commissions as part of the regular rate of pay in calculating overtime compensation for all of its non-exempt employees who were paid commissions.  As explained above, this fact can be easily proven on a class-wide basis, as Earnings Statements issued by Equity to its non-exempt employees clearly show pay periods in which commissions were paid, that those commissions were not factored into the regular rate of pay, and thus, were not included in the overtime compensation.  Overtime was simply calculated based on 1.5 times an employee's base hourly rate of pay; therefore, depriving employees of all their overtime compensation, in violation of the FLSA.  (*See* Exhibit 2).

Because Equity failed to include commission wages in its overtime computation for

Morse and all of the similarly situated non-exempt employees nationwide, Equity underpaid overtime compensation to Morse and all of her similarly situated non-exempt coworkers for a period of time over many years.  (Exhibit 1 -Morse Affidavit ¶¶ 7-10; Exhibit 2).

### III.  PROPOSED COLLECTIVE ACTION DEFINITION

Plaintiff seeks collective action status for the following class:

All non-exempt employees of Equity who currently work or previously worked at one or more of Equity's communities nationwide, who worked overtime hours in one or more weeks, and who received commissions at any time from November 25, 2010 until the present.

The members of the above-described class are "similarly situated" to the class representative Morse.

### IV.  LEGAL ARGUMENT

**A.    The Proposed Class is Proper Under the FLSA and Immediate Notice to the Class is Necessary and Appropriate**

Pursuant to the FLSA, actions for failure to pay minimum wages and overtime may be brought and maintained as an "opt-in" collective action for all claims asserted by the representative plaintiffs on behalf of themselves and other similarly situated individuals.   29 U.S.C. § 216(b).   Such collective actions differ significantly from Rule 23 class actions. *Hawkins v. Alorica,* Inc., 287 F.R.D. 431, 438-439 (S.D. Ind. 2012); *Moss v. Putnam County Hosp*., 2010 WL 2985301 ** 1-2 (S.D. Ind.); *Cheesman v. Nexstar Broadcasting Group, Inc.,* 2008 WL 2225617 *2 (S.D. Ind.); *Coan v. Nightingale Home Healthcare, Inc.*, 2005 WL 1799454 *1 (S.D. Ind. 2005); *Carter v. Indianapolis Power & Light Co.*, 2003 WL 23142183 *2 (S.D. Ind. 2003).   "Potential plaintiffs in a collective action must affirmatively state in writing

that they wish to participate in the case." *Id.* (citation omitted).  No employee can be a party to a FLSA collective action unless he or she files a written consent to join the lawsuit in the court where the action is pending.  *Id.*  Accordingly, Plaintiff seeks an order from this Court to send notice of the FLSA collective action to all of the similarly situated individuals so that they may have the opportunity to join this case.

While a request for collective action certification is "analogous to a class certification request in a civil class action under Rule 23, the Rule and its standard do not govern a FLSA case." *Carter*, 2003 WL 23142183 at *2.  In collective actions under the FLSA, courts have adopted the "more lenient" two-step approach to authorizing class certification.  *Id*.  "The first step, or the 'notice stage' involves an analysis of the pleadings and any affidavits which have been submitted to determine whether notice should be given to potential class members." *Id.;* *Hawkins,* 287 F.R.D. at 438-439.  "The second step, which usually occurs after discovery has largely been completed, allows a court an opportunity to determine whether the class should be decertified or restricted because various putative class members are not in fact similarly situated as required by the statute." *Id.*  Therefore, to prevail on a motion for class certification and notice to the class members, Plaintiff must only make a threshold showing that she is indeed similarly situated to the employees on whose behalf she seeks to pursue the claim.  *Id.*  "If plaintiffs meet this relatively modest requirement, the court can then approve a notice to be sent to potential plaintiffs who may have been subject to a common policy or plan said to violate the FLSA." *Coan*, 2005 WL 1799454 *1.  The Court is not required to make a "final determination" that the similarly situated requirement has been met before allowing notice to potential class

members.  *Carte*r, 2003 WL 23142183 at *2; *Coan*, 2005 WL 1799454 at *1 (At this stage, however, "the court does not evaluate the potential merits of plaintiffs' claims.")

The Complaint will be contemporaneously filed with this motion.  No discovery has been exchanged.   The parties are at the more lenient "first stage" of FLSA collective action certification.  *Hawkins,* 287 F.R.D. at 438-439.

### B.    Equity's Payment Scheme Designed to Avoid Payment of All Overtime Wages Constitutes A Violation of the FLSA

The FLSA requires that non-exempt employees be paid time and one-half for hours worked in excess of forty hours in a single workweek.  29 USC § 207(a)(1).  An employer violating this provision is liable for unpaid overtime compensation and an additional equal amount as liquidated damages.  29 USC § 216(b).

Equity paid Morse and her similarly situated coworkers a regular, base hourly rate of pay, but also paid a commission as part of overall compensation.  The FLSA is very clear that commission wages must be included in any calculation of overtime compensation due.  To be precise, commissions are to be included in an employee's regular rate.  *Powers v. Centennial Communications Corp*., 679 F.Supp.2d 918, 921 (N.D. Ind. 2009); 29 CFR § 778.117.

### § 778.117 Commission payments--general.

Commissions (whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula) are payments for hours worked and must be included in the regular rate.  This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the commission.  It does not matter whether the commission earnings are computed daily, weekly, biweekly, semimonthly, monthly, or at some other interval.  The fact that the commission is paid on a basis other than weekly, and

that payment is delayed for a time past the employee's normal pay day or pay period, does not excuse the employer from including this payment in the employee's regular rate.

Overtime must be calculated based on the regular rate, which includes commissions.  *Powers*, 679 F. Supp. 2d at 921; 29 USC § 207(a)(1); 29 USC § 207(e).  Using an ordinary work week, commissions are added to other regular earnings and divided by total hours worked to determine a "regular rate."   That overall "regular rate" is then multiplied by 1.5 to determine the employee's overtime rate of pay.

### §    778.118    Commission    paid    on    a    workweek    basis.

When the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek (except overtime premiums and other payments excluded as provided in section 7(e) of the Act), and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek. The employee must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard.

The FLSA regulations actually provide helpful examples to show the different manner in which a regular rate is determined for overtime calculation purposes when a portion of an employee's compensation includes commissions.

### § 778.120 Deferred commission payments not identifiable as earned in particular                                                                workweeks.

If it is not possible or practicable to allocate the commission among the workweeks of the period in proportion to the amount of commission actually earned or reasonably presumed to be earned each week, some other reasonable and equitable method must be adopted. The following methods may be used:

(a) Allocation of equal amounts to each week. Assume that the employee earned an equal amount of commission in each week of the commission computation period and compute any additional overtime compensation due on this amount. This may be done as follows:

(1) For a commission computation period of 1 month, multiply the commission payment by 12 and divide by 52 to get the amount of commission allocable to a single week. If there is a semimonthly computation period, multiply the commission payment by 24 and divide by 52 to get each week's commission. For a commission computation period of a specific number of workweeks, such as every 4 weeks (as distinguished from every month) divide the total amount of commission by the number of weeks for which it represents additional compensation to get the amount of commission allocable to each week.

(2) Once the amount of commission allocable to a workweek has been ascertained for each week in which overtime was worked, the commission for that week is divided by the total number of hours worked in that week, to get the increase in the hourly rate. Additional overtime due is computed by multiplying one-half of this figure by the number of overtime hours worked in the week. A shorter method of obtaining the amount of additional overtime compensation due is to multiply the amount of commission allocable to the week by the decimal equivalent of the fraction.

| | Overtime hours | |
|---|---|---|
| | Total hours x 2 | |

A coefficient table (WH–134) has been prepared which contains the appropriate decimals for computing the extra half-time due.

Examples: (i) If there is a monthly commission payment of $416, the amount of commission allocable to a single week is $96 ($416 x 12 = $4,992 ÷52 = $96). In a week in which an employee who is due overtime compensation after 40 hours works 48 hours, dividing $96 by 48 gives the increase to the regular rate of $2. Multiplying one-half of this figure by 8 overtime hours gives the additional overtime pay due of $8. The $96 may also be multiplied by 0.083 (the appropriate decimal shown on the coefficient table) to get the additional overtime pay due of $8.

(ii) An employee received $384 in commissions for a 4–week period. Dividing this by 4 gives him a weekly increase of $96. Assume that he is due overtime compensation after 40 hours and that in the 4–week period he worked 44, 40, 44 and 48 hours. He would be due additional compensation of $4.36 for the first and third week ($96 ÷ 44 = $2.18 ÷ 2 = $1.09 x 4 overtime hours = $4.36), no extra compensation for the second week during which no overtime hours were worked,

and $8 for the fourth week, computed in the same manner as weeks one and three. The additional overtime pay due may also be computed by multiplying the amount of the weekly increase by the appropriate decimal on the coefficient table, for each week in which overtime was worked.

(b) Allocation of equal amounts to each hour worked. Sometimes, there are facts which make it inappropriate to assume equal commission earnings for each workweek. For example, the number of hours worked each week may vary significantly. In such cases, rather than following the method outlined in paragraph (a) of this section, it is reasonable to assume that the employee earned an equal amount of commission in each hour that he worked during the commission computation period. The amount of the commission payment should be divided by the number of hours worked in the period in order to determine the amount of the increase in the regular rate allocable to the commission payment. One-half of this figure should be multiplied by the number of statutory overtime hours worked by the employee in the overtime workweeks of the commission computation period, to get the amount of additional overtime compensation due for this period.

Example: An employee received commissions of $192 for a commission computation period of 96 hours, including 16 overtime hours (i.e., two workweeks of 48 hours each). Dividing the $192 by 96 gives a $2 increase in the hourly rate. If the employee is entitled to overtime after 40 hours in a workweek, he is due an additional $16 for the commission computation period, representing an additional $1 for each of the 16 overtime hours.

Equity's own Earnings Statements issued to its employees conclusively show Equity's class-wide FLSA overtime violations.  Morse and her fellow non-exempt coworkers are similarly situated inasmuch as each was identically underpaid overtime compensation under Equity's own pay roll system.  Simple review of Morse's Earnings Statement shows that Equity took Plaintiff's base hourly rate of pay and multiplied that rate by 1.5 when paying for overtime hours worked.  (*See* Exhibits 2).  The commissions paid were paid in a separate category and the Plaintiff's Earnings Statement shows conclusively that commission payments were not included in the calculation of regular rates or overtime rates of pay.  (*See* Exhibit 2).  The glue that holds

the collective action together is Equity's own Earnings Statements.  Equity made a uniform decision to exclude commission payments from the regular rate and overtime rate of pay computation.

A payment system or scheme designed to avoid the effect of the FLSA would violate the Act and be invalid.  See *Walling v. Helmerich & Payne, Inc*., 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29 (1944).

> **D.    A Collective Action Is the Most Economic and Most Efficient Method to Address Equity's Company-Wide FLSA Violations**

From a manageability standpoint, this case will be decided upon summary judgment. Equity violated the rights of its non-exempt employees, who received commission, to receive their full overtime by failing to include commissions in the overtime pay calculation.  The Court will be able to decide this case - on a class wide basis - based upon Equity's pay roll records, including Earnings Statements.  This is precisely the economic purpose of an FLSA collective action.  *See generally Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989) ("A collective action allows ... plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact ....").  This lawsuit will force Equity to correct its unlawful wage and hour policy and practice and will provide a collective class of plaintiffs the right to recover unpaid overtime compensation and liquidated damages.  The FLSA claim is ideal for collective action treatment.

## V.  CONCLUSION

For all of the above and foregoing reasons, Morse respectfully requests that the Court provisionally deem the Plaintiff's FLSA claims as a collective action, approve the proposed class of collective Plaintiffs, order immediate notice of the collective action to potential members of the collective class, order Equity to provide, no later than seven (7) days from entry of the Court's Order, the full names (including middle if known), last known addresses, last known residential and cell phone numbers and e-mail addresses of all persons who worked for Equity as non-exempt employees who received commission between November 25, 2010 to the present, and for all other just and proper relief in the premises.

Respectfully submitted,

HUNT, HASSLER, LORENZ & KONDRAS LLP

/s/Robert P. Kondras, Jr. _____
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry Street,
Terre Haute, IN 47807
Phone:  (812) 232-9691
Fax: (812) 234-2881
kondras@huntlawfirm.net

 /s/Allen R. Vaught _____
Allen R. Vaught
BARON & BUDD, P.C.
(Pending application for admission to Southern District of Indiana)
Texas Bar No. 24004966
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219
(214) 521-3605 – Telephone
(214) 520-1181 – Facsimile

avaught@baronbudd.com

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's Motion to Certify FLSA Collective Action was served with the Original Complaint and summons upon the Defendant's registered agent.

Respectfully submitted,

HUNT, HASSLER, LORENZ & KONDRAS LLP

/s/Robert P. Kondras, Jr._____
Robert P. Kondras, Jr.