UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MISTY D. MORSE,                              )<br>    *Plaintiff*,                                        )<br>                                                              )<br>*vs*.                                                       )     2:13-cv-00408-JMS-MJD<br>                                                              )<br>EQUITY LIFESTYLE PROPERTIES INC.,   )<br>    *Defendant.*                                   )| |

## ORDER

Presently pending before the Court is Defendant Equity Lifestyle Properties Inc.'s ("Equity") Motion to Dismiss Commission-Based Overtime Claim and Deny Conditional Certification Motion Because Both Are Moot. [Filing No. 27.] The Court held a hearing on the motion on April 28, 2014, and denied Equity's motion from the bench. The Court also granted Plaintiff Misty Morse's Motion to Certify FLSA Collective Action Status and Issue Notice, [Filing No. 3], and her Motion for Approval of Proposed Collective Action Notice, [Filing No. 5]. This Order explains the Court's reasoning for its rulings.

## I.
### STANDARD OF REVIEW

In considering a motion to dismiss for lack of subject matter jurisdiction, the Court "must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." *United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). When a defendant raises a factual challenge to the Court's subject matter jurisdiction, the Court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (collecting cases). When a defendant argues that a plaintiff's claim is

1

moot, the burden is on the defendant to demonstrate mootness. *See, e.g.*, *Killian v. Concert Health Plan*, 742 F.3d 651, 660 (7th Cir. 2013) ("'The burden of demonstrating mootness is a heavy one,'…borne by the party seeking to have the case declared moot") (citations omitted); *Maddox v. Wexford Health Sources, Inc.*, 528 Fed. Appx. 669, 671 (7th Cir. 2013) ("[B]ecause the defendants assert that the case is moot, they bear the burden of persuasion") (citations omitted).

## II.
### BACKGROUND

Plaintiff Mindy Morse worked at Horseshoe Lakes RV Community ("Horseshoe") in St. Bernice, Indiana from 2005 to 2013. [Filing No. 1 at 2.] She worked for Horseshoe's previous owner first, then for Equity when it purchased Horseshoe sometime after her initial employment. [Filing No. 1 at 2.] She was first employed as a ranger, then ultimately as an administrative assistant. [Filing No. 1 at 2.] Equity terminated Ms. Morse on August 27, 2013. [Filing No. 1 at 2.] Throughout her employment, Ms. Morse was a non-exempt employee who Equity compensated on an hourly-paid basis. [Filing No. 1 at 3.]

Ms. Morse initiated this lawsuit against Equity on November 25, 2013. [Filing No. 1.] She alleges that Equity failed to pay her for all of her hours worked and all of her overtime work performed. [Filing No. 1 at 3.] Specifically, she alleges that Equity committed the following wage violations:

- Ms. Morse was only allowed to clock in for work at her scheduled start time and clock out at her scheduled end time; she was required to report up to an hour early for work to prepare for her day but could not clock in until her scheduled start time; and she was required to work after she had clocked out for the day;

- She was required to work without compensation at special events hosted by Horseshoe, such as holidays and weekend celebrations;

- Equity's computerized time-keeping system automatically deducted a thirty-minute meal break from her time on each day she worked, but she was never permitted to take a bona fide meal period and, instead, had to work through her lunch break;

- Equity did not pay based upon a continuous work day method because it did not measure her hours of work from the first principal activity each day to the last principal activity and did not pay for all of the hours in-between; and

- Equity did not include Ms. Morse's commissions in its computation of her overtime wages because it did not include the commission wages in its calculation of her regular rate of pay before calculating her overtime rate of compensation (by multiplying her regular rate of pay by 1.5) in weeks when she was owed overtime compensation.

[Filing No. 1 at 2-6.] Ms. Morse also alleges that Equity wrongfully withheld her final pay check, and refused to release it until she signed a "Separation and Release Agreement" releasing Equity from any legal claims she might bring against Equity, including wage and hour and employment-related claims. [Filing No. 1 at 6.] Ms. Morse did not sign the Agreement. [Filing No. 1 at 6.]

Ms. Morse asserts a collective action claim under Section 16(b) of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 216(b), on behalf of "all current and former employees of Equity's communities who were underpaid overtime compensation based upon a failure to include commission pay in the calculation of each employee's regular rate." [Filing No. 1 at 7.] She also asserts individual claims for violating the FLSA and the Indiana Wage Claims Act by failing to pay her for all hours worked. [Filing No. 1 at 11-12.]

The same day that she filed her Complaint, Ms. Morse filed a Motion to Certify FLSA Collective Action Status and Issue Notice, in which she seeks certification of a collective action class of:

> All non-exempt employees of Equity who currently work or previously worked at one or more of Equity's communities nationwide, who worked overtime hours in

3

one or more weeks, and who received commissions at any time from November 25, 2010 until the present.

[Filing No. 3.] Ms. Morse also filed a Motion for Approval of Proposed Collective Action Notice. [Filing No. 5.]

### III.
### MOTION TO DISMISS COMMISSION-BASED OVERTIME CLAIM[1]

**A. Failure to File Supporting Brief**

The Court notes at the outset that – as Ms. Morse points out – Equity did not file a supporting brief with its Motion to Dismiss, as required by Local Rule 7-1(b) ("The following motions must also be accompanied by a supporting brief: (1) a motion to dismiss…."). As noted at the hearing, the Court is authorized to deny Equity's motion based on its failure to comply with Local Rule 7-1(b). However, the Court will address the substantive reasons for its denial, and cautions counsel for Equity that it expects full compliance with federal and local procedural rules going forward.

**B. Adequacy of Equity's Offer to Ms. Morse**

Equity's Motion to Dismiss Ms. Morse's commission-based overtime claim is based on an offer it made to her in a letter to her counsel sent on February 17, 2014 – the same day it filed its Motion to Dismiss – offering her "$48.07 in back overtime pay, and an equal amount in liquidated damages, for total potential damages of $96.14." [Filing No. 27-2 at 1.] In the letter, Equity also stated that although "attorney fees are not available to an FLSA plaintiff whose claim is dismissed as moot," it "is willing to pay your reasonable attorney's fees and costs actually

---

[1] Equity's pending motion asks for two things: (1) for the Court to dismiss Ms. Morse's individual commission-based overtime claim as moot; and (2) for the Court to deny Ms. Morse's Motion to Certify FLSA Collective Action Status and Issue Notice, [Filing No. 3], because her collective action claim for commission-based overtime is also moot. [Filing No. 27.] The Court will discuss each request separately.

incurred to date concerning the commission-based overtime claim, subject of course to our review of them and determination of their reasonableness." [Filing No. 27-2 at 2.] Equity argues that this offer fully compensates Ms. Morse for her commission-based overtime claim, so her claim is moot and the Court lacks subject-matter jurisdiction.

Ms. Morse asserts that Equity has not paid her anything for her commission-based overtime claim yet, it has not made a settlement offer and she has not accepted a settlement offer, and she does not agree or concede that Equity's claim that it will pay her $96.14 provides complete relief. Accordingly, she vigorously disputes that her claim was rendered moot merely because Equity might pay the amount that it thinks might be due. [Filing No. 30 at 5-10.]

Equity contends that it correctly calculated the amount Ms. Morse "could potentially be entitled to" when Equity paid her commissions in weeks in which she worked overtime, and attaches Ms. Morse's paystubs. [Filing No. 38 at 2.] It also argues that its offer "precisely meets" Ms. Morse's demands because she has demanded "all available relief" and that is what Equity has offered, and that its offer "provides maximum relief." [Filing No. 38 at 3.]

In her surreply, Ms. Morse argues that the Court can disregard Equity's reply brief because it raises arguments for the first time. [Filing No. 40 at 2.] Ms. Morse then addresses the new evidence she claims Equity submitted in its reply – her paystubs. [Filing No. 40 at 2.] She argues that the paystubs show that the estimated commission-based overtime pay she is owed is, at a minimum, $173.79. [Filing No. 40 at 3-4.] She asserts that "Equity's 'mooting' argument is little more than a meritless tactic by an employer that recognizes it has no excuse or defense for its class-wide FLSA violations." [Filing No. 40 at 4.]

At the outset, the Court notes that Equity has not made a formal offer of judgment to Ms. Morse under Fed. R. Civ. P. 68. The Seventh Circuit Court of Appeals has noted, however, that

5

there is no difference between a settlement offer and an offer of judgment when considering whether the offer moots a plaintiff's claims. *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011) ("Although these decisions address offers that, unlike Clearwire's, were made under Rule 68, their same analysis seems to apply to any offer of complete relief"). Accordingly, the Court does not find Equity's failure to make an offer of judgment significant to the issues presented in the Motion to Dismiss.

The glaring problem with Equity's offer to Ms. Morse is that the amount of commission-based overtime pay Equity owes Ms. Morse is disputed. It is axiomatic that only an offer that undisputedly compensates the plaintiff for the full amount of his or her claim can moot that claim. *See Scott v. Westlake Services LLC*, 740 F.3d 1124, 1126 (7th Cir. 2014) ("if the defendant offers to pay only what it thinks might be due, the offer does not render the plaintiff's case moot….The plaintiff's stake is negated only if no additional relief is possible"); *see also Ward v. Bank of New York*, 455 F.Supp.2d 262, 267 (S.D.N.Y. 2006) ("Courts have, however, denied a defendant's motion to dismiss on mootness grounds where the plaintiff potentially could recover more than the relief offered by defendant, such as where the offer is not comprehensive, or where the amount due to plaintiff is disputed"); *Reed v. TJX Companies, Inc.*, 2004 WL 2415055, *2 (N.D. Ill. 2004) ("In the case at bar…the court cannot determine that [defendant's] offer fully compensates plaintiff for his damages"). For the reasons discussed below, Equity's offer to Ms. Morse is inadequate.

1. 29 C.F.R. § 778.120

Equity explained how it arrived at the $48.07 figure both through the declaration of Barb Itter, Vice President, Human Resources, for Equity, and through her live testimony at the April

28, 2014 hearing.[2] Specifically, Ms. Itter testified at the hearing that she first collected information for pay periods in which Ms. Morse both worked overtime and was paid a commission. [*See also* Filing No. 27-1 at 2.] Ms. Itter testified that she then applied the following formula, provided to her by Equity's counsel:

$$\frac{\text{Commission earned/paid}}{\text{Total hours worked during applicable commission period}} \times 0.5 \times \text{Total overtime hours worked during applicable commission period}$$

[*See also* Filing No. 27-1 at 2.]

Ms. Itter also testified that she used the ADP payroll stubs to obtain the figures to plug into the formula provided by counsel, and that the paystubs cover two-week pay periods. She explained that while each paystub reflects commission earned during the two-week pay period, the paystub does not reflect the specific week in which the commission was earned.

Ms. Itter further testified, however, that Equity does maintain records which show which specific week Ms. Morse received a payment for commission, and which week Ms. Morse earned overtime, but that she did not use those weekly records when calculating the amount of commission-based overtime Equity owed Ms. Morse. She explained that commissions are paid when the deal earning the commission has fully concluded. For example, she testified that if an employee sells an item for which she would earn commission, the commission payment to the employee is triggered when the purchase is processed, the customer pays the funds, the funds are verified, and a regional manager approves the transaction. The payroll department is then notified to pay the employee the commission. Ms. Itter testified that the timing for commission payments to employees is set forth in a written company policy.

---

[2] The Court notes that Ms. Itter testified at the April 28, 2014 hearing that, prior to this lawsuit, on a company-wide basis, Equity was not including commission earnings in its calculation of an overtime rate for nonexempted employees. She acknowledged this former practice violated the FLSA.

Equity argued repeatedly at the hearing that its offer would fully satisfy Ms. Morse because it used the "methodology" proposed by her in order to calculate the amount of commission-based overtime it owed her. Equity pointed to a page from Ms. Morse's Memorandum of Law In Support of Motion to Certify Collective Action Status and Issue Notice, in which Ms. Morse stated "[t]o properly pay all overtime to [Ms.] Morse, Equity was required to divide the commission amount by the total hours worked in the pay period, divide that sum by two (2), and then multiply [Ms.] Morse's overtime hours worked…by that result." [Filing No. 4 at 4.] Ms. Morse cites 29 C.F.R. § 778.120 for this formula. [Filing No. 4 at 4.]

Equity's argument that its offer is adequate because it was calculated pursuant to 29 C.F.R. § 778.120 fails for several reasons. First, Equity did not argue either in its motion or its reply brief that its offer represented Ms. Morse's full amount of recovery under 29 C.F.R. § 778.120. [See Filing No. 27; Filing No. 38.] In fact, 29 C.F.R. § 778.120 is not mentioned at all in either of those filings. Accordingly, the Court finds that Equity has waived any argument that its offer was adequate because it was calculated pursuant to 29 C.F.R. § 778.120. *United States v. Warren*, 86 Fed. Appx. 974, 977 (7th Cir. 2004) (argument raised for first time by counsel at hearing on motion, and not in briefs, may be forfeited).

Second, in any event, Equity's reliance on 29 C.F.R. § 778.120 is misplaced. Section 778.120 provides:

> If it is not possible or practicable to allocate the commission among the workweeks of the period in proportion to the amount of commission actually earned or reasonably presumed to be earned each week, some other reasonable and equitable method must be adopted. The following methods may be used:
>
> (a) Allocation of equal amounts to each week. Assume that the employee earned an equal amount of commission in each week of the commission computation period and compute any additional overtime compensation due on this amount. This may be done as follows:

> (1)…For a commission computation period of a specific number of workweeks, such as every 4 weeks (as distinguished from every month) divide the total amount of commission by the number of weeks for which it represents additional compensation to get the amount of commission allocable to each week.
>
> (2) Once the amount of commission allocable to a workweek has been ascertained for each week in which overtime was worked, the commission for that week is divided by the total number of hours worked in that week, to get the increase in the hourly rate. Additional overtime due is computed by multiplying one-half of this figure by the number of overtime hours worked in the week. A shorter method of obtaining the amount of additional overtime compensation due is to multiply the amount of commission allocable to the week by the decimal equivalent of the fraction.

29 C.F.R. § 778.120.

As clearly stated, § 778.120 only applies "[i]f it is not possible or practicable to allocate the commission among the workweeks of the period in proportion to the amount of commission actually earned or reasonably presumed to be earned each week." 29 C.F.R. § 778.120. Ms. Itter testified at the April 28 hearing that Equity keeps records which reflect the specific week in which Ms. Morse earned her commission. Accordingly, it *is* possible to allocate the commission among workweeks, and the alternative methods prescribed in § 778.120 do not apply.

Equity's counsel argued at the hearing that § 778.120 applies because Equity cannot determine when commissions were earned since it is impossible to tell when employees started the work that earned the commission (*i.e.*, started working on a deal) and when the work ended (*i.e.*, when the deal closed). So, counsel argued, it is not actually possible or practicable to allocation commission among the workweeks. But Ms. Itter testified that Equity's written policy provided that commission is earned when Equity received payment from the customer and notified payroll that commission was due to be paid. This payment date is reflected in records kept by Equity. The Court rejects any argument that it was not possible or practicable to allocate

the commission among the workweeks such that § 778.120 would apply – Equity has, in fact, allocated the commission among the workweeks by using the policy that commission is paid when the deal is done, and by reflecting commission payments in the weekly records it keeps.

Equity's counsel also argued at the hearing that Equity simply used the formula Ms. Morse suggested, and that she cannot now say that using that formula does not adequately compensate her. Ms. Morse suggested the formula provided in § 778.120 in her brief in support of her Motion to Certify based on very limited discovery.[3] Ms. Morse did not definitively state that use of the formula would adequately compensate her, but rather used the formula to illustrate that – based on the limited records she had – the calculation from § 778.120 would yield additional payments for commission-based overtime that Equity had not yet paid her. [Filing No. 4 at 4.]

In sum, § 778.120 does not apply to the calculation of Ms. Morse's commission-based overtime because Equity kept records of the actual week in which commission payments were made. Accordingly, the Court rejects any argument that Equity's offer was adequate because it was calculated pursuant to § 778.120.

  2. *Additional Unpaid Hours*

Even if 29 C.F.R. § 778.120 provided the proper method for calculating Ms. Morse's commission-based overtime, Equity's calculation of that overtime is flawed for another important reason: In offering Ms. Morse $96.14 for her commission-based overtime claims,

---

[3] The Court notes that Equity's responses to Ms. Morse's First Set of Interrogatories and First Request for Production of Documents are now overdue. This failure to respond to discovery in a timely fashion is part of a bigger pattern on Equity's part to delay consideration of Ms. Morse's Motion to Certify. Indeed, Equity moved for three extensions of time to respond to the Motion to Certify. [Filing No. 12; Filing No. 19; Filing No. 25.] Finally, on the day its response was due, Equity sent Ms. Morse the February 17, 2014 offer letter and filed the pending motion.

Equity ignored the fact that Ms. Morse has also claimed that Equity failed to pay her for her half-hour lunch break every workday, for certain holidays and weekends, and for time she was required to work either before clocking in or after clocking out. [Filing No. 1 at 2-6.] While Ms. Morse asserts separate individual claims for these unpaid hours, whether Equity should have included those hours in her weekly totals is directly relevant to how much commission-based overtime she is owed.

For example, if Equity's records indicate that Ms. Morse worked 2 hours below the overtime threshold in a given week but earned commission that week, payment for that week was not considered in Equity's $96.14 offer. As Ms. Itter testified, she calculated that number by considering only weeks where overtime was worked and commission was earned. If, as Ms. Morse claims, Equity wrongfully failed to compensate her for regular hours worked that week (which would be a minimum of 2.5 hours for her half-hour lunch break each workday, and could potentially include more time for working on weekends or holidays and before and after clocking in and out), her total hours worked would rise above the 40-hour threshold and she would have been entitled to overtime compensation. Accordingly, that would become a week where commission-based overtime was due and, as such, one that should have been figured into Ms. Itter's original calculation. Additionally, for weeks already figured into Ms. Itter's calculation, the total hours worked would increase which would, in turn, increase the commission-based overtime for those weeks. Thus, despite Equity's insistence otherwise, Ms. Morse's claim that she is also owed for unpaid hours worked bears directly on how much commission-based overtime she is entitled to. This is an additional and independent reason why Equity's $96.14 offer does not adequately compensate her for her commission-based overtime claim.

In sum, the Court finds that it has subject-matter jurisdiction over Ms. Morse's individual commission-based overtime claim, because Equity has not sustained its burden of showing that its offer fully compensates her for that claim and, thus, renders her claim moot.[4]  See *Killian*, 742 F.3d at 660; *Maddox*, 528 Fed. Appx. at 671.  By raising its applicability for the first time at the April 28 hearing, Equity waived the argument that the amount it offered was properly calculated under 29 C.F.R. § 778.120.  That section does not apply in any event since Equity maintains records of the specific weeks in which commission is earned and paid.  Finally, the fact that Ms. Morse also seeks payment for unpaid hours worked directly affects the amount of commission-based overtime she might be owed.

### IV.
### MOTION TO DENY CONDITIONAL CERTIFICATION MOTION BECAUSE BOTH ARE MOOT

Equity also moves to deny conditional certification of Ms. Morse's commission-based overtime claim, arguing that because her individual commission-based overtime claim is moot, so is her collective action commission-based overtime claim.  [Filing No. 27 at 2.]  The Court treats Equity's motion as a response to Ms. Morse's Motion to Certify Class, [Filing No. 3].  That response was due on February 17, 2014, [Filing No. 26], the same day Equity filed its Motion to Dismiss, [Filing No. 27], and Equity has not filed any other response to the Motion to Certify.

Equity relies upon *Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523 (2013), to argue that because its settlement offer mooted Ms. Morse's commission-based overtime claim, she cannot represent putative class members in connection with that claim.  [Filing No. 27 at 2.]

---

[4] Because the Court finds that Equity's offer does not fully compensate Ms. Morse for the commission-based overtime she claims she is owed, the Court need not consider Ms. Morse's additional arguments – for example, Equity's failure to actually pay her any money to date, and Equity's failure to include attorneys' fees and costs in its original offer.

12

Ms. Morse argues that *Genesis* is inapposite because the plaintiffs there had not yet moved for class certification, and she had when Equity made its offer. [Filing No. 30 at 3-4.] Ms. Morse also argues that other potential plaintiffs' rights would be affected if the collective action claim is dismissed because the statute of limitations for their claims is currently tolled by stipulation, and they could lose an avenue to pursue their claims if her claim is dismissed. [Filing No. 30 at 4-5.]

Equity replies that the fact that Ms. Morse filed her motion for conditional certification before Equity offered her commission-based overtime payments is "a distinction without a difference," because the cases Ms. Morse relies upon are inapposite. [Filing No. 38 at 6-7.] Equity also contends that putative class members would not want a stake in the case, that Equity is planning to pay all putative class members commission-based overtime they may be owed, and that putative class members are better off taking payment from Equity (which will be calculated for "the maximum three-year period ending when [Equity] began including commission earnings in its overtime calculations earlier this month") than they would be with using the tolled limitations period. [Filing No. 38 at 7-9.]

Although the Court has already found that Equity's offer to Ms. Morse did not moot her individual commission-based overtime claim, it will consider whether – even if it had – her corresponding collective action claim would also be moot.[5] Courts "are wary of attempts by defendants to evade FLSA collective actions by making Rule 68 offers of judgment 'at the earliest possible time.'" Ward, 455 F.Supp.2d at 268; *see also* Reed, 2004 WL 2415055 at *3

---

[5] The Court finds it especially prudent to address this issue given Equity's counsel's statement at the conclusion of the April 28 hearing that Equity will likely be making another settlement offer to Ms. Morse in the very near future.

("Of particular concern in this case is the ability of defendant purposefully to moot the class action complaint between the time of filing and class notification or certification").

Ms. Morse essentially advocates for an extension of the rule set forth by the Seventh Circuit Court of Appeals that a pending motion for class certification under Fed. R. Civ. P. 23 "protects a putative class from attempts to buy off the named plaintiffs," *Damasco*, 662 F.3d at 896, to the context of pending certification motions in collective actions under the FLSA. Equity opposes such an extension and relies upon *Genesis*, where the United States Supreme Court held that an FLSA collective action was no longer justiciable when the plaintiff's individual claim became moot as a result of an offer of judgment that fully compensated plaintiff for her claims. The Supreme Court specifically noted that the plaintiff "had not yet moved for 'conditional certification' when her claim became moot." 133 S.Ct. at 1525. Here, Ms. Morse moved for certification the same day she filed her Complaint, and long before Equity made its settlement offer. [Filing No. 3.]

It does not appear that the Seventh Circuit Court of Appeals has expressly dealt with the issue of whether a plaintiff's collective action FLSA claim is mooted by a full settlement offer or offer of judgment when there is a motion for conditional certification pending, but the offer is made before the motion has been granted or any other plaintiffs have opted into the class. *See Singer v. Illinois State Petroleum Corp.*, 2013 WL 2384314, *1 (N.D. Ill. 2013) ("It bears noting that to this Court's knowledge no Seventh Circuit opinion has dealt with the effect of a filed-but-not-acted-upon motion for certification in an FLSA opt-in case, although some District Court opinions in this Circuit have extended the earlier-described Seventh-Circuit-approved practice to such opt-in cases. It remains to be seen what impact *Genesis* may have on those FLSA cases").

While it also does not appear that district courts within the Seventh Circuit have considered the issue post-*Genesis*, several district courts outside of the Seventh Circuit have extended the reach of the Seventh Circuit's rule discussed in *Damasco* to the FLSA collective action context even after *Genesis*. See, e.g., *Ritz v. Mike Rory Corp.*, 959 F.Supp.2d 276, 279 (E.D. N.Y. 2013) ("[E]ven if an offer of judgment to a plaintiff is comprehensive and undisputed, courts will not dismiss the case as moot if there is a *pending* motion for conditional certification and additional individuals have opted in the litigation") (emphasis in original); *Michaels v. City of McPherson, Kan.*, 2013 WL 3895343, *4 (D. Kan. 2013) (plaintiff moved for conditional certification before offer of judgment made and sought to add another named plaintiff. Court stated "[i]t would frustrate the FLSA's purpose to allow plaintiff to be 'picked off' by defendant's offer, especially before the court has ruled on plaintiff's motion for conditional certification and when another plaintiff seeks to join the case").

The Court finds that, even if Equity's offer to Ms. Morse had fully compensated her for her individual commission-based overtime claim, her pending Motion to Certify Class protected her from being "picked off," and from the offer mooting her claim on behalf of the collective action class. Although the Seventh Circuit has not yet decided the issue, the Court is guided by the Seventh Circuit's instruction that it is appropriate to treat collective actions under the FLSA and claims certified under Fed. R. Civ. P. 23 together, in the same litigation. See *Ervin v. OS Rest. Servs.*, 632 F.3d 971, 973-74 (7th Cir. 2011) ("employees who institute a collective action against their employer under the terms of the [FLSA] may at the same time litigate supplemental state-law claims as a class action certified according to Federal Rule of Civil Procedure 23(b)(3)"); *Robertson v. Steamgard*, 2012 WL 1232090, *2 (N.D. Ill. 2012) ("the Seventh

15

Circuit has held that the FLSA is 'amenable to state-law claims for related relief in the same federal proceeding'").

And while the Court is mindful that there are substantive differences between a Rule 23 class and a collective action class – most notably, that a putative plaintiff must opt into a collective action class – it does not find those differences material enough to disregard the Seventh Circuit's recognition of the appropriateness of treating claims certified under Rule 23 with collective action claims under the FLSA.[6]

Equity's offer to Ms. Morse – even if it had fully compensated her for her individual commission-based overtime claim – did not moot her collective action claim. Accordingly, the Court denies Equity's Motion to Deny Conditional Certification Motion, [Filing No. 27], to the extent it seeks denial of Ms. Morse's Motion to Certify FLSA Collective Action and Issue Notice, [Filing No. 3].

Further, because the Court has rejected Equity's mootness argument and because Equity has not advanced any other arguments against class certification, the Court grants Ms. Morse's Motion to Certify FLSA Collective Action Status and Issue Notice. [Filing No. 3.] Equity did not respond to Ms. Morse's Motion for Approval of Proposed Collective Action Notice, [Filing No. 5], and the Court grants that motion as well. As discussed at the April 28, 2014 hearing and further set forth in the Court's April 29, 2014 Minute Entry, [Filing No. 46], Equity is ordered to

---

[6] Equity attempts to discredit the Supreme Court's statement in *Genesis* regarding the timing of the offer of judgment and the fact that the plaintiff there had not yet moved for conditional certification, quoting a different portion of the *Genesis* opinion which states "even if respondent were to secure a conditional certification ruling on remand, nothing in that ruling would preserve her suit from mootness." [Filing No. 38 at 7 (quoting *Genesis*, 133 S.Ct. at 1530).] But this statement is *dicta*, and *Genesis* is significantly distinguishable in any event because the parties there agreed that the offer was sufficient to moot the plaintiff's individual claims. Conversely, here, whether Equity's offer is sufficient to moot Ms. Morse's individual commission-based overtime claim is hotly contested and, as the Court has ruled, it does not moot her claim.

produce to Ms. Morse a list of employees who meet the class definition set forth in Ms. Morse's proposed Notice of Lawsuit Under Fair Labor Standards Act, [Filing No. 5-1 at 2], including the full name and last known mailing address and telephone number of each, by May 12, 2014. Ms. Morse is then ordered to submit the proposed Notice of Lawsuit Under Fair Labor Standards Act, [Filing No. 5-1], with blanks filled in, by May 16, 2014.

## V.
### CONCLUSION

Based on the foregoing reasons and as set forth in the Court's April 29, 2014 Minute Entry, [Filing No. 46], the Court **DENIES** Equity's Motion to Dismiss Commission-Based Overtime Claim and Deny Conditional Certification Motion Because Both Are Moot, [Filing No. 27], **GRANTS** Ms. Morse's Motion to Certify FLSA Collective Action Status and Issue Notice, [Filing No. 3], and **GRANTS** her Motion for Approval of Proposed Collective Action Notice, [Filing No. 5].

**Distribution via ECF only to all counsel of record**